**No. 22-35955**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

NEIGHBORS AGAINST BISON SLAUGHTER, and BONNIE LYNN,

*Plaintiffs-Appellants*,

v.

THE NATIONAL PARK SERVICE, et al.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the District of Montana,
No. 1:19-cv-128-SPW,
The Honorable Judge Susan P. Watters

---

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**

---

JARED S. PETTINATO
THE PETTINATO FIRM
3416 13th St. NW, #1
Washington, DC 20010
(406) 314-3247
Jared@JaredPettinato.com

# TABLE OF CONTENTS

Table of Authorities ............................................................... iii

Introduction ........................................................................... 1

Argument ................................................................................ 2

I. Neighbors qualify as prevailing parties. ............................. 2

   A. *Li* binds this Court. ..................................................... 3

   B. The Remand Order materially altered Neighbors' legal
      relationship with the Agencies. .................................... 5

   C. The Remand Order, as any judicial order, carried judicial
      imprimatur. .................................................................. 7

II. The Agencies' position was not substantially justified. ...... 11

   A. The district court abused its discretion by failing to apply the
      test this Court articulated in *Li*. ................................ 12

   B. A lack of a merits ruling or a confession does not carry the
      Agencies' burden of affirmatively demonstrating substantial
      justification. ............................................................... 13

   C. The Agencies violated clearly established NEPA law by
      failing to issue a supplemental EIS before the lawsuit ........ 17

III. Neighbors obtained an excellent result and EAJA makes the
    Agencies liable for full fees. ............................................ 21

   A. The Agencies are liable for full fees because Neighbors
      obtained an excellent result. ....................................... 22

   B. Neighbors' counsel took steps that a reasonable and prudent
      attorney would take. ................................................... 24

   C. District of Columbia rates apply ................................ 28

Conclusion ........................................................................... 31

Certificate of Compliance ..................................................... 32

Certificate of Service ........................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ..................................... 30

*Buckhannon Bd. Care Home v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001) ............................................................. passim

*Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) ............ 24

*Comm'r, INS v. Jean*, 496 U.S. 154 (1990) .................................. 16, 27, 28

*Cottonwood Envtl. Law Ctr. v. Bernhardt*, No. 19-35150 (9th Cir. Dec. 23, 2019) ...................................................................................... 9

*Dubois v. USDA*, 102 F.3d 1273 (1st Cir. 1996) ................................. 17, 20

*Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ............. 28

*Flom v. Holly Corp.*, 276 F. App'x 615 (9th Cir. 2008) ............................. 7

*Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir. 2000) ................................................................................... 9, 17, 21

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ............ 23, 27, 29, 30

*Gonzales v. Free Speech Coalition*, 408 F.3d 613 (9th Cir. 2005) ........... 15

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) .................................... 3

*Hewitt v. Helms*, 482 U.S. 755 (1987) ....................................................... 7

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, No. 1:20-cv-01814-JLT-EPG (E.D. Cal. Mar. 23, 2023) ......................................... 18

*Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) (en banc) ...................................................................................... 26

*Intern. Woodworkers v. Donovan*, 792 F.2d 762 (9th Cir. 1985) ............ 14

*Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401 (2015) ............................. 4

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027 (9th Cir. 2009) ................................................................ 10

*Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019) ......................................... 3

*Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007) ..................................... passim

*LN Mgmt. v. JPMorgan Chase Bank*, 957 F.3d 943 (9th Cir. 2020) ...... 21

*Marsh v. Or. Natural Res. Council*, 490 U.S. 360 (1989) ........................ 18

*McElwaine v. US W., Inc.*, 176 F.3d 1167 (9th Cir. 1999) ...................... 22

*Meier v. Colvin*, 727 F.3d 867 (9th Cir. 2013) ........................................ 16

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc) ....................... 4

*N.M. ex Rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683 (10th Cir. 2009) .................................................................................. 17, 19

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) .......................... 24, 28

*Rhodes v. Stewart*, 488 U.S. 1 (1988) ....................................................... 8

*Russell Cntry. Sportsmen v. United States Forest Serv.*, 668 F.3d 1037 (9th Cir. 2011) .................................................................... 17, 19

*Schwarz v. Secretary of Health Human Services*, 73 F.3d 895 (9th Cir. 1995) ........................................................................................ 29

*Shalala v. Schaefer*, 509 U.S. 292 (1993) ....................................... 5, 7, 11

*Sierra Club v. EPA*, 339 F. App'x 678 (9th Cir. 2009) ........................... 30

*Sole v. Wyner*, 551 U.S. 74 (2007) ....................................................... 24

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001) .................................. 23

*Tex. Teachers Ass'n v. Garland Sch. Dist.*, 489 U.S. 782 (1989) ........ 6, 26

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc) . 12, 13

*Wilkins v. United States*, No. 21-1164, Slip Op. (Mar. 28, 2023) ............ 4

## Statutes

42 U.S.C. § 4322 .................................................................................. 17

The National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4347 ...................................................................................... 1

## Other Materials

Adam Babich, *The Wages of Sin: The Violator-Pays Rule for Environmental Citizen Suits*, 10 WIDENER L. REV. 219 (2003) ............ 8

H.R. Rep. No. 98-992 (1984) ................................................................ 16

## Regulations

40 C.F.R. § 1502.9 (1989) ..................................................................... 18

40 C.F.R. § 1502.9 (2019) ....................................................................... 1

# INTRODUCTION

Appellees-Defendants the National Park Service, the U.S.D.A. Forest Service, and officers (collectively, the Agencies) recognized in 2008 and 2014 that "substantial new information and changed circumstances" affected Yellowstone wild bison management. 5-ER-1197. On those facts, the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4347, required them to issue a supplemental environmental impact statement (EIS). *See* 40 C.F.R. § 1502.9(c) (2019). But the Agencies did not complete one. After years of the Agencies failing to comply with their legal duties, Neighbors Against Bison Slaughter and Bonnie Lynn (Neighbors) had no choice but to sue. A judge sitting on this Court recognized that, without this lawsuit, the Agencies still would not have started a supplemental EIS. Oral Arg. at 1:42, No. 21-35144.

Applying precedent to the facts demonstrates that the Equal Access for Justice Act (EAJA), 28 U.S.C. § 2412(d) makes the Agencies liable for Neighbors' full attorney fees:

- Remand, even upon an agency's request like the Remand Order, 1-ER-21, materially changes the relationship among the parties,

- A court order, like the Remand Order, carries a judicial imprimatur,

- When Agencies likely sought remand to cure legal violations that existed before the lawsuit, they lacked substantial justification, and

- Instead of requiring perfect hindsight, EAJA mandates fees for the time some reasonable attorney would take to advance the case.

The Supreme Court already predicted and rejected manipulations like the Agencies pursue here: "[i]f a case is not found to be moot, and the plaintiff later procures an enforceable judgment, the court may of course award attorney's fees." *Buckhannon Bd. Care Home v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 609 (2001). This Court recognized this case is not moot. 1-ER-20. It recognized that courts can enforce the Remand Order. *Id.* Under *Buckhannon*, EAJA mandates liability for Neighbors' full attorney fees. *See* 28 U.S.C. § 2412(d).

## ARGUMENT

### I. Neighbors qualify as prevailing parties.

In their opening brief, Neighbors explained that they qualify as EAJA-eligible parties because Neighbors has no assets, and Ms. Lynn's monetary net worth is *negative* $42,838. Pls.'-Appellants' Opening Br. (Neighbors' Br.) 22-23. The Agencies did not dispute that.

Next, Neighbors demonstrated they qualify as prevailing parties. The district court's Remand Order (1) materially changed the parties'

relationship and (2) that order, like all court orders, qualifies as judicial imprimatur. Neighbors' Br. 23-33.

A. *Li* binds this Court.

In a remarkable turn, the Agencies ask this Court effectively to overturn *Li v. Keisler*, 505 F.3d 913, 917-18 (9th Cir. 2007). Fed. Defs.'-Appellees Answering Br. (Agencies' Br.) 29-31. They have not even begun to make the necessary showing. "Binding authority must be followed unless and until overruled by a body competent to do so," and even if a court "considers the rule unwise or incorrect." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001); *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2177 (2019). Moreover, "the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals." *Hart*, 266 F.3d at 1171-72 (collecting cases).

In *Li*, this Court held that, (1) if a party seeks remand, (2) if an agency requests voluntary remand from a court, and (3) if a court grants that request, then plaintiffs qualify as prevailing parties. 505 F.3d at 917-18. Here, Neighbors directly requested an EIS in their fourth claim of their Amended Complaint. 3-ER-528. The Agencies

requested voluntary remand. 3-ER-498. The district court granted that request. 1-ER-25. *Li* makes Neighbors prevailing parties.

*Li* deserves an "enhanced force" as *stare decisis* because it interpreted the EAJA statute, and "Congress can always correct any mistake it sees." *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015). "[A]gainst this superpowered form of *stare decisis*, [courts] would need a superspecial justification to warrant" overruling precedent. *Id.* at 2410. The Agencies make no showing. They merely argue that *Li* is wrong.

Like the district court, the Agencies speculate about the unstated rationale behind *Li*. Agencies' Br. 29; Neighbors' Br. 26. Precedent does not operate like that. Courts apply an opinion's stated reasoning—not reasoning a party imagines the opinion could have stated. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). The Supreme Court rejected that argument just this term. "Speculating about what [a court] might have thought about arguments it never addressed needlessly introduces confusion. This Court looks for definitive interpretations, not holdings in hiding." *Wilkins v. United States*, No. 21-1164, Slip Op. 13 (Mar. 28, 2023). *Li* binds this Court. Under a

4

straightforward application, Neighbors qualify as prevailing parties. *See Li*, 505 F.3d at 917-18.

B. <u>The Remand Order materially altered Neighbors' legal relationship with the Agencies.</u>

The Agencies deny that remand materially altered the Parties' legal relationship. Agencies' Br. 25. Remand qualifies as relief. The Supreme Court confirmed that result. *Shalala v. Schaefer*, 509 U.S. 292, 297 n.1, 302 (1993); *see Li*, 505 F.3d at 917-18; Neighbors' Br. 23-25 (collecting cases). Here, the Remand Order materially altered the legal relationship because, if the Agencies do not complete the supplemental EIS, Neighbors will not have to prove NEPA required one—only that the Agencies delayed completing it. 1-ER-20.

The Agencies argue Neighbors never sought remand, so the "district court denied all the relief requested by Neighbors." Agencies' Br. 21-22 (emphasis removed). But the plain text of Claim 4 asserts, "NEPA required the Federal Agencies to complete a supplemental environmental impact statement." 3-ER-528. The Agencies admitted four times that Neighbors received relief they sought. 3-ER-392; 3-ER-397; 2-ER-191; 2-ER-237; Neighbors' Br. 53-56. Neighbors responded to the motion for remand by stating they "support the Agencies' request

5

for remand." 3-ER-417. Finally, this Court reconzized the Remand Order "directed" further NEPA analysis. 1-ER-18. Neighbors sought remand and obtained the remand relief they sought.

The Agencies refine their argument to assert that Neighbors did not seek remand-alone, but only remand-with-vacatur. Agencies' Br. 21. That argument applies the wrong legal standard. Neighbors qualify as a prevailing party upon receiving "some relief," even if they also sought other types of relief. *Tex. Teachers Ass'n v. Garland Sch. Dist.*, 489 U.S. 782, 792 (1989) (quotations omitted); Neighbors' Br. 10. Neighbors obtained a material alteration that they sought.

The Agencies contend Neighbors obtained no material alteration of the legal relationship because no court ruled in Neighbors' favor on the merits. Agencies' Br. 22. That argument is wrong on the law. Remand orders make plaintiffs prevailing parties "regardless of whether the federal court's order addressed the merits of the underlying case." *Li*, 505 F.3d at 917. A merits ruling is neither necessary, as in the case of a consent decree without "an admission of liability by the defendant," *Buckhannon*, 532 U.S. at 604, nor sufficient. *Hewitt v. Helms*, 482 U.S. 755, 763 (1987) ("At the end of the rainbow lies not a judgment, but

some action . . . ."); *Flom v. Holly Corp.*, 276 F. App'x 615, 616 (9th Cir. 2008). Neighbors qualify as prevailing parties although no court ruled on the merits of Neighbors' claims. *See Li*, 505 F.3d at 917.

Finally, the Agencies contend the Remand Order did not materially alter the legal relationship between the Parties because it did not require the Agencies "to do something they otherwise would not have been required to do." Agencies' Br. 24 (quotations and alteration omitted). *Li*, however, recognized that remand requires action from agencies that might not otherwise have acted. 505 F.3d at 917-18 ("remand orders . . . advanced the goals sought by petitioners, and constituted material alterations of the parties' legal relationships for purposes of *Buckhannon*."); *see Shalala*, 509 U.S. at 297 n.1, 302. The Remand Order directed further NEPA analysis. 1-ER-18. The Remand Order materially altered the Parties' legal relationship.

C. <u>The Remand Order, as any judicial order, carried judicial imprimatur.</u>

In their initial brief, Neighbors explained that the Remand Order, like any court order, carries judicial imprimatur. Neighbors' Br. 29-33.

Courts focus on the actor that changed the relationship. *Id.*[1] In response, the Agencies claim the Remand Order's judicial imprimatur is not "sufficient" because the Agencies voluntarily decided to undertake the new EIS, and because Neighbors' relief was not "*obtained* through an order" and the lawsuit did not "cause the agencies to decide to conduct additional NEPA analysis." Agencies' Br. 26-28. The Agencies' arguments miss the point.

The district court issued the Remand Order, and that granted Neighbors "court-ordered" remand relief. *See Buckhannon*, 532 U.S. at 614. The Agencies' arguments are irrelevant. *See* Adam Babich, *The Wages of Sin: The Violator-Pays Rule for Environmental Citizen Suits*, 10 WIDENER L. REV. 219, 266 n.196 (2003) ("whenever a court issues an order that affords significant relief to a plaintiff, the plaintiff is a 'prevailing party' regardless of whether the opposing party resists, defaults, settles, or unilaterally surrenders.").

---

[1] All court orders carry judicial imprimatur, but not all court orders make plaintiffs prevailing parties. Declaratory relief, for example, does not always materially change the legal relationship between the parties. *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).

Ultimately, the Agencies had no power to order remand; only the district court could do that. The Agencies had no basis to move to dismiss. *See Cottonwood Envtl. Law Ctr. v. Bernhardt*, No. 19-35150 (9th Cir. Dec. 23, 2019). They could not withdraw the 2000 EIS because they were actively implementing it. *See Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 557 (9th Cir. 2000) ("The agency must be alert to new information that may alter the results of its original environmental analysis, and continue to take a hard look at the environmental effects of its planned action, even after a proposal has received initial approval." (quotations and alteration omitted)); 4-ER-710. Congress gave the Agencies no power to dismiss a lawsuit. The Agencies could have allowed the case to proceed to summary judgment where the facts would have proven their legal violations. Instead, they asked the district court to issue the Remand Order. The Agencies provided no remand relief. That court order gave Neighbors their "court-ordered" relief. *See Buckhannon*, 532 U.S. at 614.

The Supreme Court warned against "mischievous defendants," like the Agencies, who seek to "unilaterally moot[]" a case "before judgment in an effort to avoid an award of attorney's fees." *Buckhannon*, 532 U.S.

at 608. It held that, if a case is not moot, and if plaintiffs receive an enforceable judgment, then they qualify as prevailing parties. *Id.* Neighbors qualify.

The Agencies rely heavily on *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1029 (9th Cir. 2009). Agencies' Br. 26-28. *Klamath* carries no weight because that case was moot, and mootness often distinguishes prevailing parties from non-prevailing parties. *Buckhannon*, 532 U.S. at 608-09. The mootness in *Klamath* prevented those plaintiffs from obtaining relief. Neighbors' Br. 32 n.4. Here, the Agencies never withdrew the Yellowstone wild bison management plan or otherwise mooted this case. 1-ER-20. They obtained relief, so *Klamath* does not apply.

The Agencies claim EAJA's prevailing party analysis requires "specific, enforceable obligations on remand (akin to a judgment)." Agencies' Br. 28.[2] This Court already held the Remand Order creates an

_____

[2] The Agencies adopt the district court's logical fallacy of denying the antecedent that judicial imprimatur *requires* incorporating a voluntary stipulation into an order. That result does not follow logic. Agencies' Br. 30 n.3.

enforceable obligation. 1-ER-18, -20; *see Li*, 505 F.3d at 918; *see also Shalala*, 509 U.S. at 297 n.1, 302 ("remand [for further action], of course, is a judgment for the plaintiff."). If the Agencies do not complete the supplemental EIS on a reasonable time frame, Neighbors can seek relief without showing NEPA requires the supplemental EIS. 1-ER-20. The Remand Order carries judicial imprimatur. *See Buckhannon*, 532 U.S. at 614.

## II. The Agencies' position was not substantially justified.

Neighbors demonstrated in their opening brief that the Agencies failed to carry their burden of demonstrating they had substantial justification when failing to issue a supplemental EIS before the lawsuit. Neighbors' Br. 33-47. Even if agencies act reasonably during litigation, legal violations on the underlying action prohibit an agency from demonstrating substantial justification. *Li*, 505 F.3d at 920 ("The government's voluntary request to remand the proceedings to the [agency], while commendable, does not *nunc pro tunc* substantially justify the Agency's conduct for purposes of the EAJA inquiry.").

11

A. <u>The district court abused its discretion by failing to apply the test this Court articulated in *Li*.</u>

The Agencies seek deference to the district court order under the abuse-of-discretion standard. Agencies' Br. 33. The district court's decision does not merit that deference because it failed to apply *Li*. Courts abuse their discretion when they (1) apply the wrong legal rule or (2) applies law to facts in a way that qualifies as "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

The district court held the Agencies acted with substantially justification because no court had ruled against them on the merits. 1-ER-15. But motions for voluntary remand always create a gap of legal analysis because no court will have ruled on the merits. For that reason, when an agency seeks to demonstrate substantial justification, *Li* requires a fresh analysis to determine "the "likely reason behind the voluntary remand in question" by inquiring whether "the Agency's *prior action* was not consistent with clearly established law." 505 F.3d at 919 (emphasis added).

The district court never completed that inquiry. It asked only whether Neighbors obtained a ruling on the merits, whether the agency wanted to reconsider the decision, and whether the Agencies had prevailed in prior cases. 1-ER-15. The district court abused its discretion by failing to complete the fresh analysis *Li* requires. Its decision deserves no deference. *See Hinkson*, 585 F.3d at 1251.

B. <u>A lack of a merits ruling or a confession does not carry the Agencies' burden of affirmatively demonstrating substantial justification.</u>

Even if the district court's analysis qualifies as applying the correct legal standard, which it does not, its factual and legal conclusions are "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Id.* The Agencies' underlying position was not substantially justified, and this Court's analysis can stop there because no litigation event can ratify those past legal violations.

The Agencies repeat five times that they did not confess or concede error. Agencies' Br. 13, 22, 36. A failure to confess error carries no weight toward the Agencies' burden of affirmatively making an "'especially strong showing'" of substantial justification for failing to comply with NEPA. *See Intern. Woodworkers v. Donovan*, 792 F.2d 762,

13

765 (9th Cir. 1985).[3] If the Agencies had confessed error, that would have made this case easier, but failing to confess error does not affirmatively carry the Agencies' burden.

The Agencies rely on the district court's statement that no order had concluded the Agencies had violated any law. Agencies' Br. 34. Those court decisions, too, carry no weight toward the Agencies' burden. The courts denied injunctive relief based on balances of the equities—not the legal merits. 1-ER-25 to -31; 1-ER-39 to -45; 1-ER-65 to -66 n.9. This Court, too, never upheld the Agencies' underlying actions. It held merely that, when the Agencies issued a notice of intent to issue a supplemental EIS (two weeks before oral argument), the Agencies were making progress toward issuing the supplemental EIS that NEPA required and that Neighbors demanded. 1-ER-20. None of these decisions shows the Agencies were substantially justified in failing to

---

[3] The Agencies dispute their burden by contending that the legal standard changes based on the government's actions and the merits determination. Agencies' Br. 32-33 n.8. Legal standards do not change based on the facts in a case, and *International Woodworkers* says nothing about its legal standard depending on the merits holding. Again, the Agencies resist binding precedent without any basis.

complete a supplemental EIS before the lawsuit. No court decision helps the Agencies carry their burden of affirmatively demonstrating substantial justification.

The Agencies quote *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 615 (9th Cir. 2005), for the proposition that this Court can use "objective criteria" and other court rulings to determine substantial justification. Agencies' Br. 33-34. But *Gonzales* has no relevance here because the facts differ so drastically. There, this Court recognized substantial justification in defending the constitutionality of the Child Pornography Prevention Act because the United States was defending "a congressional statute from constitutional challenge" and because judges had issued contradictory opinions in four circuit courts, several district courts, and panels of this Court—before the Supreme Court ultimately struck down two sections of the statute as unconstitutional. *Id.* at 615-16, 618. This case, however, involved no constitutional challenge to a statute, and no judge concluded the Agencies' actions satisfied the law. *See id.* at 621. *Gonzales*' reasoning does not apply.

Next, the Agencies contend they reasonably requested remand. Agencies' Br. 34. That request also carries no weight toward the

Agencies' burden of showing that their *pre-litigation* failure to issue the supplemental EIS was substantially justified.

Courts make "only one threshold determination for the entire civil action" on substantial justification. *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990). A motion for remand does not substantially justify pre-litigation legal violations. *Li*, 505 F.3d at 920. Instead, Congress directed courts to focus "on the underlying Government action," *Jean*, 496 U.S. at 160 n.7, or "failure to act." 28 U.S.C. § 2412(d)(2)(D); *Meier*, 727 F.3d at 871. Congress intended EAJA "'to provide for attorney fees when an unjustifiable agency action forces litigation, and the agency then tries to avoid such liability by reasonable behavior during the litigation.'" *Jean*, 496 U.S. at 160 n.7 (quoting H.R. Rep. No. 98-992 at 9 (1984)). If the "government's underlying position was not substantially justified, [this Court] need not address whether the government's litigation position was justified." *Meier v. Colvin*, 727 F.3d 867, 872 (9th Cir. 2013). The Agencies' remand request does not prove substantial justification before the lawsuit.

C. The Agencies violated clearly established NEPA law by failing to issue a supplemental EIS before the lawsuit.

The pre-litigation facts show that NEPA required the Agencies to complete a supplemental EIS before the lawsuit. Neighbors' Br. 36-45. The Agencies claim adaptive management allowed them to act if their "scope of actions" did not differ from the 2000 EIS. Agencies' Br. 34-35. That is the wrong metric. NEPA focuses on "the *environmental impact* of the proposed action." 42 U.S.C. § 4322(2)(C)(i) (emphasis added). When the *environmental impact* exceeds the scope analyzed in the EIS, NEPA requires a supplemental EIS—even for similar actions. *See Dombeck*, 222 F.3d at 557-58; *Russell Cntry. Sportsmen v. United States Forest Serv.*, 668 F.3d 1037, 1045 n.12 (9th Cir. 2011); *N.M. ex Rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683 (10th Cir. 2009) (requiring a supplemental EIS when the "extent of impacts" of oil and gas leases changed); *Dubois v. USDA*, 102 F.3d 1273, 1293 (1st Cir. 1996) (requiring a supplemental EIS for a "new configuration" of a ski resort).

Adaptive management does not excuse agencies from NEPA's requirements to supplement when, as the record here makes clear, the environmental impacts exceeded the scope of the EIS. "If there remains

17

'major Federal actio[n]' to occur, and if the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered, a supplemental EIS must be prepared." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 374 (1989) (quoting 40 C.F.R. § 1502.9(c) (1989)); *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, No. 1:20-cv-01814-JLT-EPG, at *15 (E.D. Cal. Mar. 23, 2023) ("it is not enough simply to have an adaptive management protocol in place."). In 2008 and in 2014, the Agencies admitted to substantial new information and impacts that exceeded the scope of the 2000 EIS.

In 2008, the Agencies admitted they "collected substantial new information regarding bison, brucellosis, and the management of disease risk and suppression." 5-ER-1221 (2008 admission that the Agencies). In 2014, they admitted they possessed "substantial new information and changed circumstances since the [2000] EIS." 5-ER-1197; 5-ER-1150 ("Substantial New Information Since 2000"). This Court need go no farther to see the Agencies have no substantial justification for failing to issue a supplemental EIS before the lawsuit.

The Agencies' *post-hoc* justifications in their brief fail to show the environmental impacts remained within the scope of the 2000 EIS. The Agencies argue the number of bison "varied." Agencies' Br. 36. That statement does not deny that 486 Yellowstone wild bison killed does not fall within the spectrum of 0 to 85 analyzed in the 2000 EIS. 4-ER-746 (389 + 97); 9-ER-2262 (up to 85); Neighbors' Br. 43. Because 486 is far outside the spectrum of alternatives analyzed in the 2000 EIS, that condition alone required a supplemental EIS. *See Russell* Country, 668 F.3d at 1046; *N.M. ex Rel. Richardson*, 565 F.3d at 706 (requiring a supplemental EIS when the changed management "may produce wildly different impacts on plants and wildlife").

Other environmental impacts fall outside the scope of the EIS. The Agencies argue a reasonable person could "conclude those variations would not result in significantly different kinds of impacts." Agencies' Br. 36. The Agencies are wrong on the facts and the law. "NEPA does not permit an agency to remain oblivious to differing environmental impacts, or hide these from the public, simply because it understands the general type of impact likely to occur." *N.M. ex Rel. Richardson*, 565 F.3d at 707.

In their brief, the Agencies never point to one sentence in the EIS that analyzed the dangers from the concentrated hunt. *Compare* Neighbors' Br. 43-44 *with* Agencies' Br. 36-38. The Agencies claim their adaptive management framework was making the situation safe, Agencies' Br. 37, but the record refutes those arguments. In 2018, the Park Superintendent informed the Secretary of the Interior of the "human safety issues" from "concentrations of hunters and gut piles near roads and residences."[4] That same year, the State of Montana Fish Wildlife and Parks also sounded the alarm: "the density of hunters has increased beyond what FWP considers safe." 4-ER-757.

The Agencies never show where in the EIS they analyzed (a) the different shooting distances allowed by Montana law and Forest Service law in Beattie Gulch or (b) the "wholly new problems posed" by "squeez[ing]" impacts onto that much smaller area of the Gallatin Forest. *See Dubois*, 102 F.3d at 1293; 4-ER-769 ("Too many hunters

---

[4] "There is no social tolerance for harvesting 600+ bison in communities of Montana adjacent to YELL due to concentrations of hunters and gut piles near roads and residences, human safety issues, and hunting practices perceived to be unethical (e.g., firing lines of hunters along the park boundary, 'flock' shooting)." 4-ER-765.

concentrated in a limited area along northern boundary of park"); *compare* Neighbors' Br. 43-44 *with* Agencies' Br. 36-38. The Agencies' failure to respond concedes those arguments. *See LN Mgmt. v. JPMorgan Chase Bank*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to respond meaningfully in an answering brief to an appellee's argument waives any point to the contrary."). Those waivers, alone, compel the conclusion that the Agencies failed to demonstrate substantial justification in failing to issue a supplemental EIS before the lawsuit.

The Agencies oversaw a situation they knew exceeded the scope of the EIS long before this lawsuit, and they failed to act. NEPA prohibits agencies from "simply rest[ing]" on an EIS, like the Agencies did. *See Dombeck*, 222 F.3d at 557. For each of these reasons, independently, the Agencies violated "clearly established law" by failing to issue a supplemental EIS. *See Li*, 505 F.3d at 919. The Agencies did not act with substantial justification.

## III. Neighbors obtained an excellent result and EAJA makes the Agencies liable for full fees.

In Neighbors' initial brief, they demonstrated how they achieved an excellent result by obtaining a common good that other environmental plaintiffs sought for thirty years of litigation over Yellowstone wild

bison management; they obtained relief on every claim. Neighbors' Br. 49-59. Neighbors explained their basis for their fees, evidence that no other attorneys in Montana were available to take the case, and their evidence for a rate. *Id.* at 59-68. In response, the Agencies provide a fee analysis unmoored from precedent.

The Supreme Court strongly urged settling attorney fee cases: if a plaintiff in a non-moot case obtained a judgment, "a defendant has a strong incentive to enter a settlement agreement, where it can negotiate attorney's fees and costs." *Buckhannon*, 532 U.S. at 609. The Agencies did not heed this warning, and that leaves them "exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff." *Id.* (quotations omitted). The Agencies lack legal support for their arguments, and precedent makes them liable for Neighbors' full attorney fee.

A. <u>The Agencies are liable for full fees because Neighbors obtained an excellent result.</u>

Neighbors explained in their initial brief that this Court would most efficiently close this case by directing the Appellate Commissioner "to recommend amounts of fees and costs in district court and on appeal." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1174 (9th Cir. 1999);

Neighbors' Br. 48-49. The Agencies respond by contending that the district court has first-hand knowledge of the issues, and deciding liability would require fact-intensive analysis. Agencies' Br. 39. The Agencies misapprehend the principles involved. Nothing requires fact-intensive analysis. Neighbors demonstrated they received an excellent result and that EAJA directs a full fee. Neighbors' Br. 49-59. Determining a full fee would not require the fact-intensive analysis the Agencies portend.

Neighbors demonstrated their sustained legal effort achieved an excellent result. Neighbors' Br. 49-53. They brought forth a common good, and EAJA makes the Agencies liable for a full fee. Neighbors' Br. 9, 49-50; *see Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).

Even if the Court analyzed each line-item, the Agencies identify no disputed facts. They produced no evidence at the district court, so they have waived their opportunity to provide rebuttal evidence. *See* 9-ER-2334 (docket showing one spreadsheet of legal analysis attached to the Agencies' district-court response brief (1-SER-002)); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) ("The party opposing the fee application has a burden of rebuttal that requires

submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."). They only object to the legal significance of a few facts, and as shown below, the legal standards allow the Court to resolve those. This Court can direct a full fee without remand.

B. Neighbors' counsel took steps that a reasonable and prudent attorney would take.

The Agencies assert Neighbors obtained only limited success because they sought more relief than they received and because Neighbors lost motions. *Id.* They apply the wrong legal standard. EAJA makes the Agencies liable for time spent—even for lost motions—if *some* (not *every*) reasonable and prudent lawyer would have spent time on the task. *Nadarajah v. Holder*, 569 F.3d 906, 923 (9th Cir. 2009) (quotations omitted); *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991). Here, the Agencies "won [some] battle[s] but lost the war." *See Sole v. Wyner*, 551 U.S. 74, 86 (2007) (quotations and alterations omitted).

The Agencies dispute some hours as not "reasonably necessary to achieve the result of remand." Agencies' Br. 43. They interpret the word

"necessary" as perfect hindsight into the critical path that led to success. This Court does not use that interpretation. No attorney can foresee which motions will succeed and can spend time only on those activities. Taking that kind of conservative approach would violate the attorney's duties of vigorous advocacy. "[A] lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning." *Cabrales*, 935 F.2d at 1053. Therefore, contrary to the Agencies' proposed Monday-morning-quarterbacking, this Court does not "scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case." *Id.* Neighbors achieved ultimate victory, and EAJA makes the Agencies liable for a full fee for every step some reasonable attorney would have taken. The Agencies identified no step that no reasonable attorney would have taken, so they have no right to reduce their liability.

The Agencies assert the requested relief is "excessive," Agencies' Br. 40, but they fail to account for the care and perseverance this case took. 3-ER-369 to -374. Courts expect lawyers to spend more hours when their clients face complicated issues. *Blum v. Stenson*, 465 U.S. 886, 898

25

(1984). A reasonable and prudent attorney seeing five lost cases and seeking to weave among them a path to victory would spend more time than on a clear-cut, straightforward case. *See Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1178 (9th Cir. 2019) (en banc) (recognizing an excellent result when "most such challenges failed."); 3-ER-368-370. Indeed, Neighbors had two attorneys and spent far more time on this case than the hours for which they seek reimbursement. *See* 3-ER-369; 2-ER-175. Contrary to the Agencies' argument, Agencies' Br. 41, making the Agencies liable for attorney fees would not provide a windfall for Neighbors; failing to do so would provide a windfall for the Agencies.

The Agencies argue that Neighbors did not receive the relief they requested because "[h]alting bison hunting was [Neighbors'] core aim," that Neighbors never sought "bare remand," and that Neighbors failed to obtain emergency relief. Agencies' Br. 40-45, 48. The Agencies ignore *Texas Teachers*, 489 U.S. at 790, which held that courts do not classify relief as "primary" or "secondary" relief sought. Courts only ask if a plaintiff obtained "some relief" on the claim. *Id.* Neighbors received remand relief on every claim, and EAJA makes the Agencies liable for

fees on every claim. Neighbors' Br. 9-10, 17, 53-56; *see also Gates*, 987 F.2d at 1404 ("a district court should not reduce the lodestar merely because the prevailing party did not receive the type of relief that it requested." (collecting cases)).

The Agencies contend Neighbors received only "limited success," and that justifies decreasing the Agencies' liability. Agencies' Br. 41-42. They misapprehend the term "limited success," which refers to claims, unrelated to successful claims, that a party lost. *See Ibrahim*, 912 F.3d at 1172. But Neighbors lost no claim. They obtained remand relief on each one. Neighbors' Br. 9-10, 17, 53-56. That qualifies as complete success. *See Ibrahim*, 912 F.3d at 1173.

The Agencies contend that EAJA prohibits liability for work after their motion for voluntary remand. Agencies' Br. 42-43. The Supreme Court rejected that argument. "[A]bsent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, *a fee award presumptively encompasses all aspects of the civil action*." *Jean*, 496 U.S. at 161 (emphasis added). The Agencies did not argue that Neighbors' actions qualify as "unreasonably dilatory," but only as unnecessary. They thus

27

applied the wrong legal standard. EAJA makes the Agencies liable for the "numerous phases" of litigation—even after the Remand Order. *See id.*; Neighbors' Br. 56-59.

The Agencies complain about time spent on witness interviews for an APA case, which it contends are "not relevant." Agencies' Br. 44. But Neighbors moved for a preliminary injunction, and parties routinely file declarations on the balance of the harms. 9-ER-2320; *see Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 988, 990 (9th Cir. 2020) (reviewing a National Forest Supervisor declaration when balancing the equities for a motion for a preliminary injunction). Because reasonable attorneys interview witnesses before filing declarations, EAJA makes the Agencies liable for that time. *See Nadarajah*, 569 F.3d at 923. The Agencies failed to show any step that some reasonable attorney would not have taken, so they have no right to any deductions.

C. <u>District of Columbia rates apply.</u>

In their opening brief, Neighbors explained that they sought rates for the District Court for the District of Columbia (D.D.C.) because they filed the case there, their counsel lives there, and their declarations

stated attorneys in Montana were unavailable to take this case. Neighbors' Br. 61-63.

The Agencies rely on *Schwarz v. Secretary of Health Human Services*, 73 F.3d 895 (9th Cir. 1995), to argue that EAJA compels Montana rates because the Parties litigated the case there and the Yellowstone wild bison management happens there. Agencies' Br. 46-47. But that case recognized a special circumstance allowing out-of-district rates if, like here, the court transfers the case away from where the plaintiffs filed it. *Schwarz*, 73 F.3d at 907; 1-ER-66.

Regardless, even *Schwarz* recognizes that *Gates* mandates out-of-forum rates if attorneys in the forum district were unavailable. *Id.* In *Gates*, this Court used San Francisco rates instead of Sacramento rates based on declarations from the plaintiffs stating Sacramento attorneys were unavailable and rebuttal declarations from the government. 987 F.2d at 1405-06.

The Agencies assert that Neighbors failed to show that no attorneys in Montana were available. Agencies' Br. 45-47. But here, as *Gates* requires, Neighbors provided evidence: a declaration, from someone other than a lawyer in this case, that no other lawyer was available to

take this case. Neighbors' Br. 62-63; 2-ER-158-159. The Agencies

provided no rebuttal evidence, so the Agencies have waived their

opportunity to create any dispute of fact. *See Sierra Club v. EPA*, 339 F.

App'x 678, 680 (9th Cir. 2009). On this record, this Court can only

conclude that no attorneys in Montana were available to take this case,

and *Gates* mandates out-of-district rates.[5]

Even if this Court sought to apply Montana rates, the Agencies have

provided insufficient evidence of those rates. In their opening brief,

Neighbors provided four separate bodies of evidence to support their

attorney-fee rates: the U.S. Attorney's Office's Laffey Matrix, Mr.

Pettinato's early-career rates, declarations on environmental attorney

rates in D.C., and rates recognized in D.D.C. cases. Neighbors' Br. 64-

66. The Agencies provide a single case citation to support Montana

rates based on attorneys with less than half of Mr. Pettinato's

---

[5] The Agencies argue that Ms. Lynn did not prove she could not find an attorney. Agencies' Br. 47 n.13. But more effort would not have found an attorney, anyway. 2-ER-159. Regardless, to demonstrate unavailability of counsel, this Court does not require parties to prove how hard they tried to find counsel. *Barjon v. Dalton*, 132 F.3d 496, 501-02 (9th Cir. 1997).

experience. Agencies' Br. 47. Even if Montana rates applied, which they do not, the Agencies have failed to produce rebuttal evidence sufficient to establish those rates for Mr. Pettinato. *See Sierra Club*, 339 F. App'x at 680. EAJA mandates D.D.C. rates.

## CONCLUSION

EAJA mandates reimbursing Neighbors a fully compensable attorney fees and expert witness costs of $640,701.

Dated: June 22, 2023,        */s/ Jared S. Pettinato*
                             Jared S. Pettinato
                             The Pettinato Firm
                             3416 13th St. NW, #1
                             Washington, DC 20010
                             (406) 314-3247
                             Jared@JaredPettinato.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a) and (f) and Circuit Rule 32-1. It contains 5,829 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I counted those words using Microsoft Word. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it uses a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: June 22, 2023,       */s/ Jared S. Pettinato*
Jared S. Pettinato
The Pettinato Firm

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed Plaintiffs-Appellants' Reply

Brief with the Clerk of the Court for the United States Court of Appeals

for the Ninth Circuit by using the appellate CM/ECF system. The

appellate CM/ECF system will serve Defendants-Appellees' attorneys.

Dated: June 22, 2023,          */s/ Jared S. Pettinato*
                               Jared S. Pettinato
                               The Pettinato Firm